No. 15,808.

THE PEOPLE *v.* BYRNES.
(190 P. [2d] 584)

Decided February 16, 1948.

Mr. JAMES T. BURKE, District Attorney, Mr. JOSEPH A. MYERS, Deputy, Mr. ROBERT T. KINGSLEY, Deputy, for the people.

Mr. BRYON G. ROGERS, Mr. W. DAVID MCCLAIN, Mr. EDWIN A. WILLIAMS, for defendant in errror.

MR. JUSTICE ALTER delivered the opinion of the court.

IN this case a two-count information was filed, charging Frank J. Byrnes with misrepresentations to effect sales, and conspiracy to make misrepresentations to effect sales of certain "merchandise and service."

Defendant entered a plea of not guilty, and, upon trial, at the conclusion of the people's evidence, upon motion of counsel, the court directed the jury to return a verdict of not guilty on both counts. The district attorney brings the cause here under the provisions of section 500, chapter 48, '35 C.S.A., to have reviewed a question of law involved in the judgment.

In the first count in the information defendant is charged with a violation of the provisions of section 317, chapter 48, '35 C.S.A.; the second charged him and others with a conspiracy to violate the same.

The evidence disclosed that in June, 1945, defendant, under the name of the "Historical Publishing Company," actively engaged in a campaign to solicit subscriptions for a publication in book form to be known as "Fighting Men of Colorado." As a part of the sales campaign, defendant employed agents and solicitors who were provided by him with a brochure with pictures of men who were, or had been, in the armed forces of the United States during World War 2, together with a biographical sketch of such men, and also provided them with contracts fixing the sales price of the publication at $37.50. This price was for a complete edition of the book to be published, which would include one individual dedication page and an individual photograph, as well as a biographical sketch in one-sixth section of a page thereof. The sales price of the book was to be paid either in cash or with a small initial payment and monthly installments thereafter until the purchase price thereof was fully discharged. The contract provided by defendant contained, inter alia, the following: "The Historical Publishing Company shall not be held responsible for any statement made by anyone not contained in its printed literature, but agrees that at any time before 60 days of publication, should the proof of any misrepresentation be brought to our attention, we will refund your money for the full amount of contract."

To those who paid their contract price in full, as well as those who completed their subscription on the installment plan, the following certificate was issued:

"Certificate of Deposit

"This is to certify that there has been deposited in a Trust Fund by the undersigned, as Trustee, a sum of money, Twenty Per Cent in excess of written quotation on cost of publication of your subscription of ............... section in permanent form of "The Fighting Men of Colorado," said deposit having been made to guarantee publication and delivery of said edition to the sub-

scribers, total deposits in this fund being subject to check to cover cost of said publication, in accordance with Trust Agreement covering said deposit.

\* \* \* \*

"Issued at the request of Historical Publishing Company, guaranteeing contract with ............................for ..............................section in said edition.

Historical Publishing Company

By .............................................."

On July 12, 1945, defendant, through one of his agents or solicitors, sold three contracts to the Nelson family, three of whose sons were in the armed forces of the United States, one thereof being at home at the time and who paid $37.50 with a cash discount of five per cent allowed him. A trust certificate was issued to him bearing that date. The agent or solicitor represented that the curator of the Colorado Historical Society was to edit the publication, which representation, if made, was false. By this trust certificate it was represented that a trust fund had been established, when, as a matter of fact, the trust fund, without any trust agreement pertaining thereto, did not come into existence until July 24, 1945. The evidence further disclosed that defendant had requested, at some undisclosed date, a Denver publisher to furnish him with quotations for his publication, yet no order for any publication was made until August 29, 1945, just a week after the district attorney interviewed defendant and began an investigation of his business, and methods used in soliciting orders. Defendant furnished the publisher no copy whatever until about September 5, 1945, which was subsequent to his arrest, which occurred on August 24, 1945.

According to one of the witnesses, defendant stated that he had made arrangements for the publication of the edition. A representative of the publisher was called as a people's witness. He testified that defendant had requested an estimate of the cost of publication and had,

on August 29, 1945, ordered "1750 Copies of your book [Fighting Men of Colorado] for $10,000.00." The witness further testified: "I told him [defendant] I would want $2500 to start, $2500 when we had the proofs, $2500 when it was off the press, and then the balance upon delivery." The first payment on the publisher's contract was made on February 15, 1946, just eleven days before the trial, which began February 26, 1946. This payment was in the amount of $2500, and was evidenced by check drawn on the trust account, leaving a balance therein of $54. The trust account, until September 4, 1945, was subject to withdrawal on the signature of the defendant only; on the latter date the signature of Dominic Lepore was authorized. August 2, 1945, $100 was withdrawn from the trust account for a purpose not disclosed by the record.

One witness testified that the agent or solicitor told her "The Veterans of Foreign Wars was behind this [publication]," and upon this representation and in reliance thereon, she entered into a contract for the purchase of one edition of the publication and made a payment on her contract. Another witness stated that she purchased two editions for two of her sons and that she made the purchase on the representation that the curator of the Colorado Historical Society was to be the editor. Both witnesses called upon defendant, stated to him the misrepresentations detailed here, and demanded the return of their payments and the cancellation of their contracts, to which demand defendant answered in substance that he was not responsible for what his salesmen had stated, and refused repayment.

Another witness testified that in an interview with defendant, the latter stated that their advertising was made through newspapers to attract inquiries concerning the "Fighting Men of Colorado"; that the salesmen were then furnished with the leads originating in inquiries, and solicited subscriptions from the inquirers; and that the salesmen all operated under his direction.

Defendant further stated, as the witness testified, that it was necessary to become a subscriber before one's picture and biographical sketch appeared in the publication, but subsequently he stated to the witness that the book would contain names of all Colorado fighting men engaged in World War 2, without reference to payments or subscriptions.

The date of the offenses was alleged in the information as on or about the 26th day of June, 1945; the information was filed on the 24th day of August, 1945; and the defendant was arrested on or about the last mentioned date.

There was evidence that defendant used newspaper advertising to attract inquiries; a brochure with pictures therein of men who had been or were in the armed forces of the United States, and a short biographical sketch thereof, which, for defendant's advertising purposes was gratuitously furnished; a written contract evidencing the purhcase of an edition of the book proposed to be published; and the certificate of deposit set forth hereinabove.

At the conclusion of the people's evidence, defendant interposed a motion for a directed verdict of not guilty, and the motion was granted. If, the evidence considered, the trial court correctly ruled on said motion, its action must be approved; otherwise disapproved. The first count in the information was based upon section 317, chapter 48, '35 C.S.A., which, so far as pertinent to this case, reads: "A person, * * * who, with intent to sell or in any wise dispose of merchandise, securities, service, or anything offered by such person, * * * directly or indirectly, to the public for sale or distribution, * * * or to induce the public in any manner to enter into any obligation relating thereto, or to quiet title thereto, * * * makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated or placed before the public, in this state, in a newspaper or other.

publication, or in the form of a book, notice, hand-bill, poster, bill, circular, pamphlet, or letter, or in any other way, an advertisement of any sort regarding merchandise, securities, service, or anything so offered to the public, which advertisement contains any assertion, representation or statement which is untrue, deceptive or misleading, shall be guilty of a misdemeanor."

The argument of counsel for defendant, that the newspaper advertisements, the brochures, the contracts, and the certificates of deposit here involved are not such advertisments as are embraced within the provisions of this section is specious and fallacious and mere sophistry. The statute is sufficiently broad to cover practically every known method of public announcement which can be made or circulated by means of printed matter. To hold that in order to violate the provisions of this section the publication must be made in a newspaper is to unduly restrict the meaning of the act and wholly disregard its plain and unambiguous provisions. We hold that the printed matter used in connection with defendant's venture was violative of the terms of said section if the evidence establishes that there is therein "any assertion, representation or statement which is untrue, deceptive or misleading."

The record contains evidence to the effect that defendant stated that his agents and solicitors were working under his directions; consequently he must have assumed responsibility for any misrepresentation made by them in connection with the sale of his publication, and under the terms of his contract, if there was misrepresentation, he undertook, in accordance with his contract, to refund the money for the full amount of the contract. One of defendant's agents or solicitors represented to a contract purchaser that the Veterans of Foreign Wars was behind the publication; another represented to a subscriber that the curator of the Colorado Historical Society was to be the editor of the publication. The evidence is that these representations were false,

and reliance upon the truth thereof was the inducing cause for entering into the contracts. When contract holders conferred with defendant and told him of the misrepresentations and demanded a refund of payments made by them, defendant disclaimed all responsibility for misrepresentations made by his agents and solicitors and refused to refund. One of the certificates of deposit appearing in the record under date of July 12, 1945, was executed by defendant, when, as a matter of fact, no trust fund was then in existence and such was not established until twelve days thereafter. Defendant filed no trust agreement with the depositary of the fund and his signature was the only one authorized in connection with the trust account until more than ten days after his arrest. The order for publication was made August 29, 1945, while the first payment thereon was made by check drawn against the trust fund evidenced by the certificate of deposit and was dated February 15, 1946. This check, according to the evidence, and assuming the propriety thereof in connection with the publication, was the first expenditure, so far as the evidence discloses, in connection with the publication. August 2, 1945, approximately eight days after the opening of the trust account, and prior to any estimate of the cost of publication, there appears a withdrawal from the trust fund in the sum of $100, which, as we have said, was for purposes undisclosed by the record. The contract itself is misleading and deceptive, for it provides that the defendant should "not be held responsible for any statement by any one not contained in its [defendant's] printed literature." But defendant further agreed in the same contract that, at any time within sixty days prior to the publication, proof of any misrepresentation brought to his attention would result in a refund of the money paid on the subscription. When advantage was attempted to be taken of this provision and proof submitted of misrepresentation, defendant complacently stated that "He could not be responsible for what his salesmen had told me [the

witness]." Whether the undisputed evidence was reliable and worthy of credence, and whether the statements and representations contained in the contract and in the certificate of deposit were untrue, deceptive and misleading, was, under the circumstances, a question for the jury's determination, in which situation the court could not properly grant a motion for a directed verdict.

The second count in the information charged defendant, together with one Clark, "and some person or persons to the district attorney * * * unknown," with a conspiracy to violate the provisions of said section 317.

The evidence discloses that Clark was a salesman or solicitor engaged by defendant in connection with the publication of "Fighting Men of Colorado," as also were McCarty and Rozell. As stated by witnesses, these agents and solicitors made false, untrue or misleading statements concerning the publication, and, according to one witness, defendant stated that the agents and solicitors "worked under his direction." The evidence as to the statements and misrepresentations made to purchasers by these agents is as hereinbefore set forth.

The only point raised by the motion for a directed verdict as to the second count in the information was, "for the reason that the State has failed to prove that any conspiracy was entered into by the defendant and another person to commit a misdemeanor." When two or more persons conspire, cooperate or agree to do or to aid in doing any unlawful act, a conspiracy, punishable under our statute, is formed. No objection was made to the testimony relative to the misrepresentations made by either McCarty or Rozell, even though these two salesmen or solicitors were not named as parties to the conspiracy. It is not essential, in charging one with a conspiracy to commit an unlawful act, that defendant's coconspirators be named. *Lewis v. People*, 115 Colo. 434, 174 P. (2d) 736; *Anstess v. United States*, 22 F. (2d)

594; *Didenti v. United States,* 44 F. (2d) 537; 15 C.J.S., pp. 1115, 1116; 11 Am. Jur., p. 562, §27.

 If defendant's agents and solicitors, in cooperation and agreement with him, made false and misleading statements in order to effectuate sales of defendant's publications, the latter was guilty of a conspiracy to effect sales, under the provisions of section 317. There was evidence from which the jury might reasonably have found that defendant, with salesmen McCarty and Rozell, entered into an agreement to thus effectuate sales, and, consequently, under this evidence, it became the exclusive function and duty of the jury to determine the guilt or innocence of defendant, and the direction of a verdict by the court cannot be upheld.

 The authority of the district attorney to institute and prosecute this action in this court is not challenged, and, consequently, it will not be determined; notwithstanding which, we direct attention to the provisions of section 500, chapter 48, '35 C.S.A., and article 6, page 79, S.L. '41.

The ruling of the trial court in granting the motions for directed verdicts was erroneous, and is disapproved.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HILLIARD dissent.

MR. CHIEF JUSTICE BURKE dissenting.

I am unable to concur in the disposition of this cause, although in accord with the holding that the admitted evidence was within the statute. The order "disapproving" should be "Judgment Reversed." The "disapproval" is clearly intended as a conclusion, or intimation, that some question of jeopardy is before us. Such is not, and could not be, the fact. That question could only arise when, if ever, the state attempted to retry the defendant. Moreover, since we are merely advising and not deciding I insist we should finish the task. Any careful reading of section 49, chapter 2, page 79, S.L. '41, and

section 500, chapter 48 '35 C.S.A., will demonstrate that the attorney general is the only official authorized to prosecute this writ. Hence, the reasons being stated, the order should be "Writ Dismissed."

MR. JUSTICE HILLIARD's opinion.

On the theory that defendant in error had violated section 317, chapter 48, '35 C.S.A., an information "charging," to quote from the district attorney's brief, "misrepresentation to effect sales and conspiracy to make representations to effect sales," was filed against defendant. At the conclusion of the people's evidence on trial to a jury, the court, moved thereto by counsel for the accused, directed a verdict of not guilty, which was returned, received and recorded in due form. The district attorney, seeking review of that ruling, invokes section 500, chapter 48, '35 C.S.A., which provides inter alia: "Writs of error shall lie on behalf of the state, or the people, to review decisions of the trial court in any criminal case upon question of law arising upon the trial, motions to quash, demurrers, pleas in bar, pleas in abatement, motions in arrest of judgment, or where a statute is declared unconstitutional. * * *; provided, that nothing in this section shall be construed so as to place a defendant in jeopardy a second time for the same offense."

Considering that heretofore we have said that where a criminal information has been filed against a party, trial had, and acquittal directed, as here, a writ of error to review the proceedings should be dismissed, for that, since "by express terms of the statute, §1997, supra, [§500, c. 48, '35 C.S.A.] [he] may not be placed in jeopardy a second time for the same offense," it becomes unnecessary to determine the question sought to be presented. *People v. Denver Athletic Club*, 63 Colo. 189, 164 Pac. 1158. "When the court directs a verdict of not guilty, * * * such direction is equal to acquittal and will support a plea of former jeopardy." *Castner v. People*,

67 Colo. 327, 184 Pac. 387. See, also, *Davidson v. People,* 64 Colo. 281, 170 Pac. 962. Not only does the statute of the people's reliance provide that "nothing" therein "shall be construed so as to place a defendant in jeopardy a second time for the same offense," but, "Section 18, art. 2, of our bill of rights, protects a person against a second jeopardy for the same offense." *Roland v. People,* 23 Colo. 283, 47 Pac. 269. Applying the doctrine of the foregoing authorities to the inquiry here, and regardless of what conclusion our study of the record might lead us to entertain, defendant would not be subject to further prosecution. The Constitution provides an insurmountable barrier against it, and the statute, which provides for limited inquiries on error in behalf of the people in relation to criminal proceedings, emphasizes that nothing therein shall work a different result. In addition to the foregoing, I concur in Mr. Chief Justice Burke's opinion that the writ of error here was not competently presented.

Therefore, not only would futility attend our labors in any such examination, but we have held in like cases that a writ of error on the part of the people will not be entertained. *People v. Kippy,* 64 Colo. 597, 173 Pac. 395; *People v. Hopkins,* 70 Colo. 163, 197 Pac. 1020. In those cases, the writs of error were dismissed. Like order should be entered here.