**Alan Kimbrough McFADDEN,
Plaintiff-Appellant,**

**v.**

**Eddie LUCAS, et al.,
Defendants-Appellees.**

**No. 82–4472
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Sept. 1, 1983.

Certiorari Denied Nov. 28, 1983.
See 104 S.Ct. 499.

# 144

Alan Kimbrough McFadden, pro se.

W.V. Westbrook, III, Sp. Asst. Atty. Gen., Jackson, Miss., for defendants-appellees.

Before REAVLEY, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The plaintiff, an inmate at the Mississippi State Penitentiary at Parchman, filed this *pro se* section 1983 suit against the warden, associate warden, chaplain and administrator of Unit 23 at Parchman. The essence of the plaintiff's complaint was that his first amendment right to the free exercise of his Sunni Moslem religion had been violated and that he had been subjected to cruel and unusual punishment in violation of his eighth amendment rights when, after he had refused to shave his Moslem beard in conformance with prison regulations, twenty-two prison officials had gathered in his prison unit and had forced him to shave his beard.

In his complaint, the plaintiff sought $250,000 in punitive damages, declaratory relief from violation of his constitutional rights, and injunctive relief enjoining the defendants from shaving his beard, enjoining the defendants from physical or mental attacks or the rewarding of inmates who physically or mentally attacked him, enjoining the defendants to allow him access to the prison law library, and enjoining the defendants to prepare new regulations governing Sunni Moslems' grooming standards. The plaintiff alleges no facts which have occurred (except, of course, as relate to new grooming standards) requiring the relief prayed for, but apparently anticipates the need in the future.

The *pro se* complaint was filed in early May of 1982. In the latter part of September 1982, the United States Magistrate to whom the case had been assigned granted leave in accordance with 28 U.S.C. § 1915(a) for the plaintiff to proceed *in forma pauperis*. The magistrate also ordered, however, that process should not issue in the case until further order of the court. Thereafter, acting without service of process, the magistrate recommended that the claim of damages be denied because the defendants enjoyed qualified immunity from the plaintiff's claim regarding grooming standards under *Shabazz v. Barnauskas*, 598 F.2d 345, 347 (5th Cir.1979) (qualified immunity exists because of the "uncertain nature of the jurisprudence"). As to the injunctive relief sought by the plaintiff, the magistrate recommended that the claim be treated as a motion to inter-

vene in a pending class action on behalf of Sunni Moslems at Parchman.[1] The magistrate ruled that the plaintiff's interests were adequately represented by the parties in the class action and therefore recommended that the putative motion to intervene in the class action be denied.

The plaintiff objected to the magistrate's report, claiming that the charges in his suit were not typical of the class action claims, that the law and facts applicable to his case differed from those in the class action, and that he would not be fairly and adequately represented by the parties in the class action. The plaintiff specifically pointed out his claim of cruel and unusual punishment in the shaving of his beard. Additionally, the plaintiff pointed out that a portion of the injunctive relief which he sought differed from that injunctive relief sought in the class action.

The district court adopted the magistrate's report, dismissed the claim for damages, and, treating the claim for injunctive relief as a motion to intervene in the class action, denied it. The plaintiff filed a timely notice of appeal. The district court granted leave to appeal *in forma pauperis.*

The two principal issues before us are 1) whether the complaint failed to state an arguable violation of the plaintiff's eighth amendment rights and 2) whether the court acted properly in treating the portion of the complaint alleging a first amendment violation as a motion to intervene and in denying that motion.

## I.

We first consider the dismissal of the complaint prior to service of process. Viewing the plaintiff's *pro se* complaint with the liberality to which it is due, *Taylor v. Gibson,* 529 F.2d 709, 714 (5th Cir.1976), we look to see whether under 28 U.S.C. § 1915(d) the complaint was "frivolous or malicious." *Watson v. Ault,* 525 F.2d 886, 892–93 (5th Cir.1976). By "frivolous" we mean that no arguable factual or legal basis of constitutional dimension exists for the asserted wrong. 525 F.2d at 892. A *pro se* complaint is not dismissible for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980).[2]

The most serious allegation contained in the *pro se* complaint outside the claimed first amendment violations, which are dealt with *infra,* is that "twenty-two correctional officers armed with sticks and Lupine natures" came to Unit 23 and ordered that the

---

**1.** During the summer of 1982, approximately twenty-nine *pro se* civil rights actions had been filed by alleged adherents of the Moslem faith at Parchman challenging a broad spectrum of rules and regulations at the penitentiary on the grounds that such rules and regulations violated the Moslems' free exercise of their religion. At least one of the cases involved the specific question of the grooming standards as applied to Moslem inmates. In August 1982, the magistrate had consolidated five of the Moslem cases as a class action "on behalf of all inmates at the Mississippi State Penitentiary at Parchman who are adherents of the Muslim religion." *Givhan v. Thigpen,* No. GC 82–64–WK–P (N.D.Miss. Aug. 16, 1982).

**2.** While, as a rule, a district court's *sua sponte* dismissal of a *pro se* complaint should be based specifically on a section 1915(d) determination of frivolousness or maliciousness, dismissal is appropriate in the proper case even absent a specific statement of such finding by the district court. Recently, in *Harris v. Dept. of Justice,* 680 F.2d 1109 (5th Cir.1982), appeal was taken from a section 1915(d) dismissal where the lower court had dismissed the plaintiff's complaint "due to the perplexing state of her thirty-six page complaint and because of her utter failure to conform to the most elemental provisions of F.R.Civ.P. 8." 680 F.2d at 1110. On appeal, this court found that the complaint was frivolous and upheld the dismissal.

Similarly, in *Shaw v. Briscoe,* 541 F.2d 489 (5th Cir.1976), the district court dismissed a *pro se* section 1983 complaint on the basis of *stare decisis.* This court upheld that dismissal, stating simply that the plaintiff could "prove no set of facts" entitling him to relief. 541 F.2d at 490.

We emphasize here, however, that dismissal of a *pro se* complaint prior to service of process should in most cases follow a specific determination under section 1915(d) that the complaint is "frivolous or malicious." *See Holloway v. Gunnell,* 685 F.2d 150, 152 (5th Cir.1982).

plaintiff go to the kitchen area and have his beard shaved. The plaintiff does not state whether the twenty-two correctional officers were in the kitchen when he was shaved. Most significantly, however, although the plaintiff does allege an intimidating show of force, nowhere does he allege that he was physically harmed in any way.

■ We are presented with the question of whether the plaintiff's eighth amendment right to be free from cruel and unusual punishment was "arguably" violated by the bare facts, liberally construed, in his complaint.[3]

■ Clearly, an allegation of an unjustified serious physical assault against an inmate raises an arguable section 1983 claim. *Williams v. United States,* 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1950) (involving 18 U.S. § 242, the criminal counterpart of section 1983); *Tolbert v. Bragan,* 451 F.2d 1020 (5th Cir.1971); *Brown v. Brown,* 368 F.2d 992 (9th Cir.1966). On the other hand, as a rule, "mere threatening language and gestures of a custodial office do not, even if true, amount to constitutional violations." *Coyle v. Hughes,* 436 F.Supp. 591, 593 (W.D. Okl.1977). "Were a prisoner . . . entitled to a jury trial each time that he was threatened with violence by a prison guard, even though no injury resulted, the federal courts would be more burdened than ever with trials of prisoner suits . . . ." *Bolden v. Mandel,* 385 F.Supp. 761, 764 (D.Md. 1974). *See Johnson v. Glick,* 481 F.2d 1028, 1033 n. 7 (2d Cir.1973) (the use of words, no matter how violent, does not comprise a section 1983 violation).

■ In determining the propriety of dismissal of the plaintiff's claim here, we must view the alleged wrong in the context in which it occurred. As stated in *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981),

not every personal hurt by a state officer constitutes a violation of the fourteenth amendment . . . . [S]ome state-agent inflicted injury is so minor as to occasion only a tort claim, not a constitutional invasion. In determining whether the state officer has crossed the constitutional line that would make the physical abuse actionable under Section 1983, we must inquire into the amount of force used in relationship to the need presented, the extent of the injury inflicted and the motives of the state officer. If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983.

Or, as cogently stated by Judge Friendly in *Johnson v. Glick,* 481 F.2d at 1033,

[t]he management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

Applying these standards, we believe that the plaintiff's complaint falls so far short of stating a section 1983 cause of action as to

---

**3.** This is the most serious allegation contained in the complaint which falls outside the scope of the *Givhan* class action. The only other portion of the complaint which falls outside *Givhan* is the prayer for injunctive relief to allow the plaintiff unrestricted use of the prison library "every working day during the penden-

cy of this law suit." The complaint contains absolutely no allegation that the plaintiff was wrongfully denied use of the library. This prayer for injunctive relief, absent more, does not implicate any arguable constitutional violation. *See McDonald v. Hall,* 610 F.2d 16, 19 (1st Cir.1974).

warrant *sua sponte* dismissal by the court below. The plaintiff has nowhere alleged that he was physically assaulted.[4] In fact, the plaintiff nowhere alleges that, except for the commonplace event of being shaved, any touching of his person occurred at all. The guards here were acting to enforce an established prison regulation which provides that "male offenders are to shave daily" and that "[b]eard [sic] and goatees are not permitted for identification purposes." *Inmate Handbook and Rules and Regulations,* Mississippi Department of Corrections, ch. 6, § III, ¶ 6–5 and 6–6(a). The regulation has a legitimate security purpose, and its enforcement in no way could be construed as arbitrary, capricious or merely for the sake of punishment.

This court has held that reasonable steps taken to enforce reasonable security needs in a prison are not violative of a prisoner's constitutional rights. *See, e.g., Olgin v. Darnell,* 664 F.2d 107 (5th Cir.1981) (removal of inmate's clothes reasonably related to legitimate prison goals). While twenty-two officers armed with sticks and threatening demeanor may arguably be excessive, we must, in the absence of physical abuse, concur with the lower court's dismissal. The alleged conduct, absent more, cannot be said to rise to the level of conduct which "shocks the conscience." *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952).[5]

## II.

We consider next the propriety of the lower court's dismissal of the complaint as a motion to intervene in the ongoing *Givhan* class action involving the first amendment rights of the Sunni Moslems at Parchman. As stated, at least one case among those consolidated in *Givhan* involves the specific issue of the Moslems' religious tenet which forbids men from shaving their beards.[6]

The magistrate found that because application of the grooming regulations to Moslem inmates is an issue in *Givhan* and because counsel had been appointed to represent the Moslems, the plaintiff's "motion" should be denied because of adequate representation of his interest in *Givhan.*

As with other questions involving intervention, the trial court has significant discretion in granting or denying intervention in a class action. Where the lower court justifiably determines that a would-be intervenor's interests are adequately represented, that determination will not be overruled. 7A C. Wright & A. Miller, Federal Practice and Procedure § 1799 at 254 (1972).

While all of the facts surrounding the *Givhan* action have not been presented for our review, it appears that the plaintiff's first amendment interests in practicing his orthodox Sunni Moslem religion will be adequately represented. He is clearly a member of the *Givhan* class for which an attorney has been appointed. *Givhan* involves the specific issue of Parchman's grooming standards as they conflict with the Sunni Moslem dogma. We cannot say, therefore, that the court below abused its discretion either in treating the plaintiff's first amendment claims as a motion to intervene or in denying intervention to the plaintiff.

In affirming the result of the district court, however, we must modify its order as it relates to the plaintiff's first amendment claims. The order is modified to assure that it will not operate to prejudice his first amendment claims (or any of his rights in

---

4. Nor can we, even construing the complaint with the requisite liberality, assume physical violence. That liberality does not allow us to conjure up unpled allegations. *Slotnick v. Staviskey,* 560 F.2d 31, 33 (1st Cir.1977), *cert. denied,* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978).

5. Because we find that the complaint utterly failed to state a section 1983 violation with regard to the prison officials' actions, it is not necessary to consider the question of the officials' qualified immunity from damages under *Shabazz.*

6. The order of the court in *Givhan* consolidating the cases provides that the "plaintiffs retain the opportunity to prosecute their challenge of the grooming standards of the penitentiary as it effects [sic] their religious exercise."

suing there) now pending in the *Givhan* class action lawsuit. Thus his claim for damages under the first amendment, though they would appear nominal, are dismissed without prejudice to his later renewing these claims if it is determined that, as a member of the *Givhan* class, his first amendment rights were violated by the requirement that his beard be shaved.

Thus for the reasons set forth above and consistent with the preceding paragraph, the action by the district court is

AFFIRMED.