The **GEHL GROUP, a Florida corporation, Michael K. Brady, Fraternal Order of Police, Northern Colorado Lodge # 3 and Fraternal Order of Police, Colorado Metroplex, Plaintiffs,**

v.

**Thomas KOBY, individually and in his capacity as Chief of Police for the Police Department of the City of Boulder, Colorado; George Epps, individually and in his official capacity as Sheriff of Boulder County, Colorado; the Police**

1410

Department of the City of Boulder, Colorado; the Boulder County Sheriff's Department; the City of Boulder; the County of Boulder; Dave Hayes, individually and in his official capacity as a Sergeant for the Police Department of the City of Boulder, Colorado; Detective Ross, individually and in his official capacity as a Detective for the Police Department of the City of Boulder, Colorado; and John Does Nos. 1–12, Defendants.

Civ. A. No. 92–K–2375.

United States District Court, D. Colorado.

Dec. 2, 1993.

Michael E. Gurley, Donald B. Gentry, Denver, CO, for plaintiffs.

Andrew R. Macdonald, Asst. Boulder Co. Atty., Walt Fricke, Asst. City Atty., Boulder, CO, Thomas Buescher, Brauer, Buescher, et al., Theodore S. Halaby, Robert M. Liechty, Halaby, McCrea & Cross, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This case is before me on two motions for summary judgment. Plaintiffs are the Gehl Group ("Gehl"), a Florida Corporation, engaged in the business of fund raising solicitation, Michael K. Brady ("Brady"), regional manager for Plaintiff Gehl, the Fraternal Order of Police, Northern Colorado Lodge # 3 and the Fraternal Order of Police, Colorado Metroplex (collectively referred to as ("the F.O.P.")). In the first summary judgment motion, Defendants Thomas Koby ("Koby"), Chief of Police of the City of Boulder; the Police Department of the City of Boulder; Dave Hayes ("Hayes"), John Ross

("Ross") and Sabrina Paul ("Paul"), officers in the City of Boulder Police Department; and the City of Boulder (collectively, the "City Defendants") request summary judgment on Plaintiffs' first two claims for relief under 42 U.S.C. § 1983 and § 1985 for violations of their First and Fourteenth Amendment rights and for conspiracy to have Plaintiffs unconstitutionally charged. In the second motion, Defendants George Epp ("Epp"), Sheriff of Boulder County, the Boulder County Sheriffs Department, and Boulder County (collectively, "the County Defendants") seek summary judgment on similar grounds. I consider these summary judgment motions on these two claims together and grant the motions.

### I. *Facts and Procedural Background*

This action was filed on December 4, 1992. Jurisdiction is invoked under 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights and elective franchise). On February 8, 1993, I granted the City Defendants' motion for stay of discovery, pending resolution of whether Defendants are protected by qualified immunity.

Commencing in 1988, Gehl and the F.O.P. entered into written agreements, pursuant to which Gehl sold tickets for shows and events on behalf of the F.O.P., fraternal organizations composed of law enforcement officers. Gehl retained a significant portion of the proceeds of such sales, while the remainder went to the F.O.P. In January 1991, the Boulder Police Department received citizen complaints regarding misrepresentations by Gehl solicitors that money donated would go directly to that department when, in fact, the donations benefitted the F.O.P. Subsequently, a writer for the Boulder newspaper, The Daily Camera, interviewed Officer Hayes of the Boulder Police Department. In an article dated January 9, 1991, the writer quoted Hayes as saying that the money being raised was not going to the police department. After the article appeared, the Boulder Police Department received numerous complaints regarding the above-mentioned misrepresentations. Hayes called two of the complainants, Mary Eliasson and William Chronic, on June 20, 1991 and July 1, 1991, respectively,

and verified their complaints. Apparently, based upon these two complaints, Boulder police officer Ross drafted a criminal complaint against Michael K. Brady for violation of the Fraud in Effecting Sales Act,[1] charging the Gehl Group with making a misleading statement in an advertisement addressed to the public for the purpose of promoting sales.

Before drafting the summons and complaint, Ross sought the legal advice of the Boulder Police Department's legal advisor, who approved his actions. In addition, before serving the summons and complaint, Hayes sought the advice of the District Attorney's office. On August 29, 1991, in response thereto, Deputy District Attorney Joan Nagel ("Nagel") wrote Hayes, stating that she had reviewed the summons and complaint. Nagel enclosed a copy of the file she had received in response to her request to the Consumer Affairs division of the District Attorney's office to compile the complaints they had received regarding F.O.P. fundraising misrepresentations. According to the memo of a Consumer Affairs volunteer dated August 26, 1991 included in the file: "In January 1991, we began receiving numerous calls directly from consumers regarding F.O.P. solicitations in the Boulder area for a 60's show in June 1991. A total of sixteen calls were received. Some followed the article run in the Daily Camera on January 9, 1991." (City Defs.' Ex. G. at 3.) The memo briefly summarizes each call. In at least fourteen of these, the caller stated that the F.O.P. solicitor had intimated that the proceeds would benefit the Boulder police. The memo also disclosed that Brady had told the volunteer that as of August 20, 1991, recording equipment was in place to record all sales calls.

Nagel said in her letter that her "recommendation at this time is not to begin a criminal prosecution," but that "[i]f the misrepresentations continue during F.O.P.'s fall fundraising we could then proceed with a criminal case." *Id.* at 1. Nagel stated that the reasons for her "hesitancy to pursue this matter criminally" included the facts that F.O.P. had been cooperative, had taken affir-

---

1. Colo.Rev.Stat. § 18–5–301 (1986).

mative steps to curtail misrepresentations, had sent out accurate literature concerning the beneficiaries of their fundraising efforts, and moreover, "several law enforcement officers in Boulder County do belong to F.O.P." *Id.* Despite her opinion against taking any action, Nagel opined, "[a]fter reading over the case files and the statute, I believe we have a prosecutable case." *Id.* If the Boulder Police Department wished to proceed with the service of a summons at that time, she suggested that the summons(es) should be: (i) issued for Fraud in Effecting Sales under Colo.Rev.Stat. § 18–5–301(1)(e), a class two misdemeanor; (ii) issued to the corporation(s) (rather than individuals), either F.O.P. or Gehl Group, depending on who Hayes determined to be perpetuating the misrepresentations; and (iii) served on the registered agent(s) of the corporation(s). *Id.* at 1–2. Notwithstanding Nagel's recommendation and suggestions, on September 18, 1991, Ross served the above described summons and complaint on Brady, the designated representative for the Gehl Group.

Trial in the criminal case against Brady and Gehl was set to commence in January, 1992. In an attempt to demonstrate the good faith efforts of Plaintiffs to address any problems or concerns regarding F.O.P.'s fundraising in Boulder County, Plaintiffs requested a meeting with Defendants and other law enforcement representatives of Boulder County. The meeting was held on January 7, 1992, attended by Koby, Ross, Hayes, Epp, Scott Goff ("Goff"), a police officer in Fort Collins and a national trustee of F.O.P., Brady (participating by conference call), two attorneys from the District Attorney's office, two attorneys representing the F.O.P. and Gehl, and two attorneys representing either the Boulder Police Department or Sheriff's Department. In addition, according to Goff, the President of the Boulder Police Benefit Association and the head of the University of Colorado Police were present.

The parties' accounts of what was said at this meeting differ. According to Goff:

At the beginning of the meeting, it was indicated to those present that we were willing to take any appropriate action to address concerns they may have regarding

the solicitations. Sheriff Epp responded by stating "we ran the Denver Sheriff's Union and the Aurora PPA out of Boulder and if you don't stop soliciting, there will be felonies filed against you. I don't want you calling Boulder."

(Pls.' Ex. 1, Aff. Goff ¶ 7). Brady gives a similar account of Epp's statement. Neither the City Defendants nor the County Defendants deny that Epp made such statement.

According to Goff and Brady, they proposed various actions to address concerns regarding the solicitations, including making tape-recordings of solicitations available to Boulder law enforcement, undertaking to "discipline, fire or prosecute any solicitor who may violate the law or make improper statements" and otherwise working with Boulder law enforcement regarding their concerns. Koby, however, maintains that, although the Gehl representatives indicated their willingness to co-operate, "they said that because the telephone solicitors were paid minimum wage, it was difficult to ensure before hand what they would or would not say over the phone." (City Defs.' Ex. H, Aff. Koby ¶ 3). Epp makes a similar allegation in his affidavit. (County Defs.' Ex. A, Aff. Epp ¶ 3.)

Goff and Brady maintain that Koby said that F.O.P. were "the prostitutes of the law enforcement profession." (Pls.' Ex. 1, Aff. Goff ¶ 8; Pls.' Ex. 2, Aff. Brady ¶ 5(b)). Koby denies that he said this, stating "rather, I said that the F.O.P. were prostituting themselves off the back of the police officers by allowing themselves to be sold so cheaply. At the time I made this statement, I understood that professional fundraisers of this kind would generally only return 10% of the collected money to the charitable organization." (City Defs.' Ex. H, Aff. Koby ¶ 5.)

Goff and Brady maintain that Koby said that what F.O.P. and Gehl were doing was not a violation of law and that they were dropping the charges, but that he wanted F.O.P. out of Boulder County and would continuously file charges until "something stuck" or they stopped calling in Boulder. (Pls.' Ex. 1, Aff. Goff ¶ 8; Pls.' Ex. 2, Aff. Brady ¶ 5(c).) Defendants do not deny these statements.

On January 9, 1992, two days after the meeting, the Boulder County District Attorney moved to dismiss the criminal case for the following reasons:

 1. The summons and complaint was improperly issued to the defendant on behalf of a corporation.

 2. The summons and complaint was improperly charged under Title 18 of the Colorado Revised Statutes and should have been filed under Title 6, "Colorado Charitable Solicitations Act."

 3. It is the People's intention to further investigate and refile this case at a later date.

(Pls.' Ex. 3.)

Plaintiffs contend that since the January 7, 1992 meeting, the Defendants have continued their discriminatory activity in various forms, including a threat of dismissal of an F.O.P. trustee and indications of ongoing investigations. Koby states that after the January 7, 1992 meeting, "I was supposed to have set up a plan to solicit citizen complaints on the matter. However, the person who would have been in charge of this effort changed jobs and this plan was not developed." (City Defs.' Ex. H, Aff. Koby ¶ 4.) Hayes states that after the meeting, "I was involved in an incidental investigation due to a few citizen complaints that came to my attention. However, none of these complaints formed the basis for a new filing." (City Defs.' Ex. A, Aff. Hayes ¶ 4.)

Plaintiffs maintain that since the charges were brought, they have suffered a decrease in receipts from solicitations in the Boulder County area.

## II. *Qualified Immunity*

■ Defendants argue that the individual officials have qualified immunity as to Plaintiffs' § 1983 and § 1985 claims. Qualified immunity allows a public official to escape liability if his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Defendants argue that the officials are entitled to qualified immunity because Plaintiffs have not shown that they violated

clearly established law regarding either the alleged harassment or Plaintiffs First and Fourteenth Amendment rights.

In *Woodward v. City of Worland*, 977 F.2d 1392 (10th Cir.1992), the Tenth Circuit discussed the procedure for analyzing a claim for qualified immunity in a summary judgment motion.

First, the defendant must raise the defense of qualified immunity. Once the defendant has adequately raised the defense, the plaintiff must show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations sufficient to show that the official violated the clearly established law. Then the defendant assumes the normal summary judgment burden of establishing that no material facts that would defeat his claim for qualified immunity remain in dispute.

*Id.* at 1396–97; *see also Subryan v. Regents of Univ. of Colorado*, 813 F.Supp. 753, 758 (D.Colo.1993). Plaintiffs' burden to show a violation of clearly established law is significant and requires that he "do more than simply allege the violation of a general legal precept." *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir.1992).

In *Anderson v. Creighton*, the Supreme Court explained "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990).

To assess whether the individual officials have qualified immunity in this case, I must first outline the components of Plaintiffs' § 1983 claim to determine whether Plaintiffs have shown a violation of "clearly established law." Plaintiffs have plead two theories in

support of their claim: one based on the allegation that Defendants' alleged harassment violated Plaintiffs' First and Fourteenth Amendment rights and the other based on the allegation that Defendants conspired to have Plaintiff unconstitutionally charged.

### A. Violation of Plaintiffs' First Amendment Rights

Plaintiffs claim that Defendants' conduct violated their rights to freedom of speech, protected by the First Amendment. I must examine whether Plaintiffs have shown: (1) that the law was clearly established relating to Plaintiffs' First Amendment rights at the time Defendants acted; and (2) that Defendants violated such clearly established law. See Woodward, 977 F.2d at 1396–97.

With regard to showing that the law was clearly established, plaintiffs rely on Riley v. National Federation of Blind of N. Carolina Inc., 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988). In Riley, the Supreme Court held that "charitable solicitations 'involve a variety of free speech interests … that are within the protection of the First Amendment,' and therefore have not been dealt with as 'purely commercial speech.'" Id. at 788, 108 S.Ct. at 2673 (citing Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 632, 100 S.Ct. 826, 833–34, 63 L.Ed.2d 73 (1980)). A scheme which "chills" such freedom of speech restricts either the charities' or the professional fundraisers' ability to speak and is unconstitutional. Id. 487 U.S. at 794, 108 S.Ct. at 2676. Assuming, based on these authorities, that Plaintiffs have shown that their First Amendment rights to freedom of speech were clearly established when Defendants acted, the issue is whether they have shown that Defendants violated such rights.

Plaintiffs maintain that Defendants' "filing of 'false or misleading statement' charges under the Fraud in Effecting Sales Act without probable cause, or the threat to file felony charges under the Colorado Charitable Solicitations Act [2] without probable cause" effectively chilled their freedom of speech. Further, Plaintiffs argue that "the question of whether Defendants' conduct violated clearly established law boils down to the question of whether the Defendants' had probable cause to charge Brady with making false or misleading statements." (Pls.' Opp'n. Mot. Summ. J. & Stay Disc. at 5.)

Plaintiffs contend that there was no probable cause to issue a summons against Brady for violation of the Fraud in Effecting Sales Act [3] which provides in pertinent part:

**Fraud in effecting sales.** (1) A person commits a class 2 misdemeanor if in the course of business, he knowingly:

> .   .   .   .   .

> (e) Makes a false or misleading statement in any advertisement addressed to the public or to a substantial segment thereof for the purpose of promoting the purchase or sale of property or services.

Colo.Rev.Stat. § 18–5–301(1)(e).

The question before me, however is not simply whether probable cause existed for the issue of the summons. Rather, the point is whether a reasonable police official could have believed the summons to be lawful, in light of clearly established law and the information the official possessed. If so, then Defendants are entitled to qualified immunity. See Anderson, 483 U.S. at 641, 107 S.Ct. at 3039–40. The Supreme Court has "recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." Id.

■ It is undisputed that, before the issuance of the summons, the Boulder Police Department possessed the following relevant information. First, the department had received complaints from several citizens, two of which had been verified by Hayes in re-

---

**2.** Colo.Rev.Stat. § 6–16–111 (1992).

**3.** The summons and complaint states that the charge is under section "18–5–301(e)(f)." Colo. Rev.Stat. § 18–5–301(1)(f) was, however, repealed effective July 1, 1979.

corded conversations, that Gehl solicitors had misrepresented that money donated to the F.O.P. would go directly to the Boulder Police Department. Second, the department sought advice from the District Attorney's office concerning the issuance of the summons. Although the Deputy District Attorney advised the department not to begin a criminal prosecution at that time, she remarked, "[a]fter reading over the case files and the statute, I believe we have a prosecutable case," (City Defs.' Ex. G. at 1) and that if the Boulder Police Department wished to proceed, summons should be issued against the corporation(s) under the Fraud in Effecting Sales Act and served on the registered agent. Third, the Consumer Affairs Division had summarized sixteen calls which they had received concerning Gehl's solicitations, in fourteen of which the caller stated that the F.O.P. solicitor had intimated that the proceeds would go directly to the Boulder police.

These undisputed facts establish that the officers of the Boulder Police Department reasonably believed that there was probable cause and are entitled to qualified immunity. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039–40. Plaintiffs' arguments against probable cause are technical and do not support a different conclusion. Plaintiffs contend that no probable cause existed because there is no evidence that Brady made a false or misleading statement (assuming Brady was the intended defendant),[4] that the alleged false or misleading statements were in printed form, as purportedly required under Colorado law, or that Gehl's board of directors or Brady had knowingly tolerated any of the alleged misrepresentations to invoke corporate criminal liability under Colorado law.[5]

Addressing each of plaintiffs' contentions, assuming that Brady was the named defendant, *People v. Byrnes,* 117 Colo. 528, 190 P.2d 584, 587 (1948), holds that the manager of a firm can be found guilty under the Fraud in Effecting Sales Act based upon misrepresentations made by solicitors working for him.[6] Further, *Byrnes* did not restrict the Act to printed matter, but held it sufficiently broad to cover every known method of public announcement which can be made or circulated by means of printed matter. *Id.* 190 P.2d at 587. Finally, proof that Gehl knowingly tolerated the misrepresentations to invoke corporate liability would not constitute an essential element of probable cause in bringing the initial charge. Even though this is not a necessary element, the numerous calls received by the Boulder Police Department and the Consumer Affairs Division could create a reasonable belief that there was some high level toleration of the misrepresentations. Even if I assume, *arguendo,* that the officers (and the Deputy District Attorney) erred in concluding that probable cause existed to issue the summons, the officers nevertheless would be entitled to

---

4. City Defendants argue that the named Defendant was the corporation, Gehl, rather than the individual, Brady, whose name appears in the summons and complaint under the space designated for "Defendant" and providing for last, first and middle names.
   Detective Ross acted in good faith in completing the form summons and complaint where the form specifically asks for the last name of the person being served, although Detective Ross explained the charge as "the Gehl Group made a misleading statement in an advertisement addressed to the public for the purpose of promoting sales."
   (City Defs.' Reply Br. re Mot. Summ. J. & Stay Disc. at 8.)

5. That law provides in pertinent part:
   **Criminal liability of corporations.** (1) A corporation is guilty of an offense if:

   (b) The conduct constituting the offense is engaged in, authorized, solicited, requested,

commanded or knowingly tolerated by the board of directors or by a high managerial agent acting within the scope of his employment or in behalf of the corporation.
   (2) As used in this section, "agent" means any director, officer, or employee of a corporation, or any other person who is authorized to act in behalf of the corporation or any other agent in a position of comparable authority with respect to the formulation of corporate policy or the supervision in a managerial capacity of subordinate employees.
   Colo.Rev.Stat. § 18–1–606 (1986).

6. In *People v. Byrnes,* 117 Colo. 528, 190 P.2d 584 (1948), the Colorado Supreme Court construed former section 317, chapter 48, '35 C.S.A. which is similar to Colo.Rev.Stat. § 18–5–301 (1986).

qualified immunity because their decision was reasonable, even if mistaken. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039–40.[7]

### B. *Violation of Plaintiffs' Fourteenth Amendment Rights*

■ Next, I must examine the second component of Plaintiffs' § 1983 claim to determine whether Defendants violated clearly established law precluding qualified immunity. Plaintiffs claim that Defendants' conduct violated their right to conduct their lawful business, violating procedural and substantive due process protected by the Fourteenth Amendment. It is undisputed that the constitutional right to life, liberty and property includes "the liberty to follow a trade, profession, or other calling." *Wroblewski v. City of Washburn,* 965 F.2d 452, 455 (7th Cir.1992). "Section 1983 does not distinguish between personal liberties and property rights, and a deprivation of the latter without due process gives rise to a claim under § 1983." *Gillihan v. Shillinger,* 872 F.2d 935, 939 (10th Cir.1989). Again, assuming Plaintiffs have established an underlying liberty interest to conduct their lawful business, the issue is whether Plaintiffs have shown that Defendants violated clearly established law so as to deprive Plaintiffs of such liberty.

### 1. *Procedural Due Process*

Plaintiffs assert a procedural due process claim based on filing of criminal charges without probable cause and defamation, which plaintiffs argue is analogous to *Wroblewski,* 965 F.2d 452. In *Wroblewski,* the plaintiff contended that the City's policy had excluded him from his chosen area of work and that this policy, accompanied by defamation, constituted a deprivation of liberty violating procedural due process. The court reasoned that

[t]he Supreme Court held in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), that mere defamation by public officials does not deprive the victim of liberty or property. Yet defamation that is inci-

dent to the government's refusal to reemploy an individual can implicate a liberty interest. *Perry v. F.B.I.,* 781 F.2d 1294, 1300 (7th Cir.) (en banc), *cert. denied,* 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986) (citing *Munson v. Friske,* 754 F.2d 683, 693 (7th Cir.1985)) (citing [*Board of Regents v.*] *Roth,* 408 U.S. [564] 573, 92 S.Ct. [2701] 2707 [33 L.Ed.2d 548]).

*Wroblewski,* 965 F.2d at 456.

Interpreting Plaintiffs' obtuse argument, it appears that they attempt to analogize their situation to *Wroblewski.* In other words, Plaintiffs assert that the alleged defamation coupled with filing of wrongful charges in this case is equivalent to the defamation coupled with refusal to reemploy in *Wroblewski,* and in this way is a violation of procedural due process. Even if I accept this analogy, under *Wroblewski,* Plaintiffs must establish two things: (1) defamation and (2) the absence of probable cause. They have failed to do either.

To determine whether the statement made by Koby that F.O.P. were "the prostitutes of the law enforcement profession" is constitutionally protected, it is necessary to establish first whether it constitutes defamation under Colorado state law. Before *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 21, 110 S.Ct. 2695, 2707, 111 L.Ed.2d 1 (1990), statements of "pure" opinion were recognized as having constitutional privilege and thus were not actionable in Colorado. *See Burns v. McGraw–Hill Broadcasting Co., Inc.,* 659 P.2d 1351, 1356–60 (Colo.1983). After *Milkovich,* however, the relevant inquiry became not whether a statement is characterized as a "fact" or "opinion," but whether the statement could be reasonably understood as containing an express or implied assertion of fact. *See Milkovich,* 497 U.S. at 21, 110 S.Ct. at 2707; *see also Keohane v. Wilkerson,* 859 P.2d 291, 296 (Colo.App.1993). If the court determines that the statement is actionable, because it could be so reasonably understood, then the claim may be submitted

---

7. Plaintiffs' reliance on *Cannon v. City & County of Denver,* 998 F.2d 867 (10th Cir.1993), is inapposite. The officers' decision that probable cause existed to issue the summons was reasonable and, therefore, they are entitled to qualified immunity. Accordingly, the question does not arise as to whether they are entitled to qualified immunity under the "exceptional circumstances" defense based on reliance on legal opinion.

to the finder of fact to determine whether the statement is defamatory. If not, the statement will receive full constitutional protection and no action for defamation will lie. *See Keohane,* 859 P.2d at 297.

Although *Milkovich* abandoned the fact/opinion terminology, the three-factor analysis previously employed to determine the actionability of a statement is still relevant to determine whether a statement could be reasonably understood as containing an express or implied assertion of fact. *Keohane, Id.* at 296. These factors were identified in *Burns:*

> First, whether the statement complained of is "cautiously phrased in terms of apparency." For example, the use of "in my opinion," while not determinative, may provide the reasonable listener with grounds to discount that which follows. Second, the entire published statement must be examined in context, not just the objectionable word or phrase. Third, all the circumstances surrounding the statement, including the medium through which it is disseminated and the audience to whom it is directed, should be considered. (Citations and footnote omitted.)

659 P.2d at 1360.

With regard to the first factor, phraseology, the "metaphoric choice of words . . . reveals that they were intended and reasonably would be perceived as rhetorical hyperbole rather than fact" not intended to be understood in their literal sense but meant to express Koby's opinion that the F.O.P. demeaned the law enforcement profession by allowing Gehl to make considerable profits off its name. *Sall v. Barber,* 782 P.2d 1216, 1218 (Colo.App.1989); *see also Reddick v. Craig,* 719 P.2d 340, 344–45 (Colo.App.1985) ("take," "rapist," "swindle" read in context could only be understood as rhetorical hyperbole meant to express Craig's opinion that, insofar as Reddick was concerned, county taxpayers were not getting their money's worth.)

Second, examining the statement in its context, not just the statement itself, it is undisputed that Gehl was making significant profits off the name of the F.O.P. In this context, it is apparent that a reasonable person could not interpret Koby's words as an assertion of known fact, but expressing his personal conclusion that such practice degraded the law enforcement profession.

Finally, all the circumstances surrounding the statement must be considered. (*Burns,* 659 P.2d at 1360.) These include the fact that Koby made the statement at a meeting attended only by law enforcement officials and lawyers who would have understood the statement to be metaphorical opinion, rather than fact. "When a party makes a speculative or conjectural statement based upon truthful, nondefamatory facts which are disclosed or otherwise generally known to the audience, the statement cannot reasonably be understood as an assertion of fact." *Keohane,* 859 P.2d at 899. .

Plaintiffs' have not established that Koby's statement could be reasonably understood to contain or imply a verifiable fact and, therefore, they fail to show that the statement is defamatory. Second, as I have previously determined, a reasonable police official could have believed that the summons was lawful, in the light of clearly established law and the information the official possessed. For these reasons, Plaintiffs' attempted analogy to *Wroblewski* fails.

I find that Defendants are entitled to summary judgment on the procedural due process claim since Plaintiffs have failed as a matter of law to show that Koby's statement was defamatory and, second, even if the statement was defamatory, Defendants are entitled to qualified immunity because a reasonable person would have thought that probable cause existed for issuing the summons.

### 2. *Substantive Due Process*

Plaintiffs also assert a substantive due process claim based on "the arbitrary nature of Defendants' action in threatening prosecution to drive plaintiffs out of Boulder." (Pls.' Opp'n. Mot. Summ. J. & Stay Disc. at 11.). Plaintiffs here focus on the alleged statements of Koby and Epp at the meeting on January 7, 1992. Plaintiffs maintain that Koby said that "he wanted the F.O.P. out of Boulder County and they would continually

file charges against us until something stuck or we stopped calling in Boulder." (Pls.' Ex. 1, Aff. Goff ¶ 8; *see also* Pls.' Ex. 2, Aff. Brady ¶ 5(c).) Plaintiffs further allege that Epp stated: "We ran the Denver Sheriff's Union and the Aurora PPA out of Boulder and if you don't stop soliciting, there will be felonies filed against you. I don't want you calling Boulder." (Pls.' Ex. 1, Aff. Goff ¶ 7; *see also* Pls.' Ex. 2, Aff. Brady ¶ 5(d).)

The question is whether reasonable police officials could have believed that these threats were lawful in the light of clearly established law. In other words, have plaintiffs demonstrated that such threats violated clearly established law as to what constitutes violation of substantive due process? The only case cited by plaintiffs in support of their substantive due process claim is *Wroblewski*, 965 F.2d 452. Plaintiffs point out that Wroblewski's "substantive due process claim failed in that case because he did not show, despite being singled out for no good reason, arbitrariness in fact." (Pls.' Opp'n. Mot Summ. J. & Stay Disc. at 13.) Plaintiffs do not distinguish the facts of the instant case nor cite any authority that a mere threat of malicious prosecution amounts to a constitutional violation.

> Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir.1985) (citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.), cert. denied, 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983)). In *McFadden*, the court stated that " 'mere threatening language and gestures of a [state actor] do not, even if true, amount to constitutional violations.' " *McFadden*, 713 F.2d at 146 (quoting *Coyle v. Hughs*, 436 F.Supp. 591, 593 (W.D.Okl.1977)).

*Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir.1992); *see also Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989), (threat by police officer that "I am going to get you …" not actionable under § 1983.) In contrast, courts have found a violation of substantive due process in certain circumstances where threatening language is coupled with physical abuse or a physical threat to kill. *See Hopson*, 961 F.2d at 1378–

79; *see also McFadden v. Lucas*, 713 F.2d 143, 146–47 (1983). Here, Plaintiffs have failed to establish that the statements of Koby and Epp amounted to more than mere verbal threats. This being the case, Plaintiffs fail to state a claim for violation of substantive due process. Therefore, I do not reach the issue of qualified immunity in relation to this claim.

### 3. *Equal Protection*

Plaintiffs allege two grounds for their equal protection claim. The first is the alleged statement of Koby when he was "informed that his actions were illegal and were different from how other solicitors were treated in Boulder County and responded by saying he did not care about other solicitors, he wanted FOP to stop soliciting in Boulder County." (Pls.' Ex. 1, Aff. Goff ¶ 8; *see also* Pls.' Ex. 2, Aff. Brady ¶ 5(e).)

Plaintiffs make no showing of fact to establish that Koby's words constituted actionable discrimination. The equal protection clause's prohibition of differential treatment applies only where individuals are similarly situated. *See Eisenstadt v. Baird*, 405 U.S. 438, 446–47, 92 S.Ct. 1029, 1034–35, 31 L.Ed.2d 349 (1971). Plaintiffs do not dispute that their telephone solicitors made misrepresentations nor that complaints were made in this regard to the Boulder Police Department and the Consumer Affairs Division of the District Attorney's office. Plaintiffs fail to identify any individual or group, situated similarly to themselves, who received different treatment. Accordingly, they fail to state an equal protection claim.

The other basis for Plaintiffs' equal protection claim is "the fact that Plaintiffs have no available proceedings, apart from this § 1983 suit, to defend themselves against the continuing threat to be prosecuted with felonies based on distorted investigations, threats that Plaintiffs' members will be fired, and spreading rumors that a Plaintiffs' representative is getting kickbacks." (Pls.' Opp'n. Mot Summ. J. & Stay Disc. at 13.) I can find no authority to support the contention that a right to an action exists under the Equal Protection Clause simply because no

other right gives rise to such action.[8] Therefore, since Plaintiffs fail to state an equal protection claim, I do not reach the issue of qualified immunity on this claim.[9]

For the aforesaid reasons, I find that Defendants are entitled to summary judgment on Plaintiffs' first claim for relief under 42 U.S.C. § 1983.

## C. *Conspiracy*

Plaintiffs' second claim for relief is for conspiracy to violate civil rights under 42 U.S.C. § 1985. They allege that Defendants "conspired and agreed together, and with unnamed, unknown persons, to cause Plaintiffs to be wrongfully and unconstitutionally investigated, arrested, criminally charged and prosecuted." (Pls.' Compl. ¶ 57.)

In order to prevail on a § 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.

The defense of qualified immunity exists to protect an officer whose law enforcement actions were objectively reasonable.... In a section 1983 action claiming that plaintiff was injured by state action as the result of a conspiracy which includes private persons, the defense is still available to the qualifiedly immune actor. Yet, if a court must always consider whether a conspiracy might have been formed, the officer will face fact development or trial even where the official action was objectively reasonable. Such a consequence carries the potential for destroying the efficacy of the defense.

To avoid this consequence, our analysis of the denial of a motion to dismiss or summary judgment must look first to determine the objective reasonableness of the state action which is alleged to have caused harm to the plaintiff. Only if that state action is determined not to be objectively reasonable should we look to whether the officer's actions were taken pursuant to a conspiracy.

*Pfannstiel v. City of Marion,* 918 F.2d 1178, 1187 (5th Cir.1990).

Since I have determined that Defendants are entitled to qualified immunity on the acts underlying the alleged conspiracy, under *Pfannstiel,* I need not look to whether their actions were taken pursuant to a conspiracy. Since qualified immunity exists on Plaintiffs' underlying claim, by definition, Plaintiffs fail to state a claim for conspiracy.

## III. *Conclusion*

I find that Plaintiffs have not shown that Defendants violated clearly established law with respect to either their first claims for relief under § 1983 or their second claim for relief under § 1985. This being the case, Defendants do not assume the normal summary judgment burden of establishing that no material facts that would defeat their claim for qualified immunity remain in dispute. *See Woodward,* 977 F.2d at 1396–97. Accordingly, I grant the City and County Defendants' motions for summary judgment as to Plaintiffs first two claims for relief.

Plaintiffs have invoked the court's supplemental jurisdiction to state their third through eighth claims for relief. Since I

---

**8.** Plaintiffs' reliance on *Buckey v. County of Los Angeles,* 957 F.2d 652 (9th Cir.1992), in this regard is not persuasive as the facts in that case are entirely distinguishable. There the court recognized the possibility of a putative claim for a denial of equal protection because "the procedures that ultimately established Buckey's innocence were made necessary only because of a wrongful conspiracy of entities and persons acting under the color of state law." *Id.* at 655. In the present case, I have determined that the actions of Defendants were objectively reasonable and that therefor, as more fully discussed in the text below, I need not look to whether their actions were taken pursuant to a conspiracy.

**9.** Plaintiffs argue that Defendants acted with improper motive and that such motive is relevant to determine whether a constitutional violation has occurred. In *Bruning v. Pixler,* 949 F.2d 352, 356 (10th Cir.1991) the court held that: "[W]hen the plaintiff's claim contains a subjective element, such as the defendant's purpose, motive or intent," then the defendant's state of mind becomes relevant to whether there is qualified immunity with respect to that claim. Plaintiffs fail to show that their First or Fourteenth Amendment claims contain such subjective element, i.e. they do not establish that Defendants' state of mind is relevant to such claims.

**1420**

grant summary judgment on the first two claims, I have dismissed all claims over which I have original jurisdiction. This being the case, I decline to exercise supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(c)(3).

I deny the motions for stay of discovery as moot. I also deny a third motion for partial summary judgment, filed by Defendants Hayes, Ross and Paul, relating to Plaintiffs' defamation claim against them, as moot. Plaintiffs, in their opposition, withdrew the defamation claim against Hayes and Ross and have successfully moved to strike Paul as a defendant. Accordingly,

IT IS ORDERED THAT the City Defendants' Motion for Summary Judgment is GRANTED as to Plaintiffs' first two claims for relief; and

IT IS FURTHER ORDERED THAT the County Defendants' Motion for Summary Judgment is GRANTED as to Plaintiffs' first two claims for relief; and

IT IS FURTHER ORDERED THAT Plaintiffs' third through ninth claims for relief are DISMISSED for lack of supplemental jurisdiction; and

IT IS FURTHER ORDERED THAT the City and the County Defendants' Motions for Stay of Discovery and the Motion for Partial Summary Judgment by Defendants' Hayes, Ross and Paul are DENIED as moot; and

IT IS FURTHER ORDERED THAT this case is DISMISSED. Each party to bear his or its own costs.