[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 04-10241

_____

D. C. Docket No. 01-00011-CV-1-SPM

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 13, 2006
THOMAS K. KAHN
CLERK

JOSE ELIAS SEPULVEDA,

Plaintiff-Appellant,

versus

RALPH W. BURNSIDE,
STEPHEN M. OELRICH, *et al.*,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(March 13, 2006)**

Before BIRCH and WILSON, Circuit Judges, and ROYAL[*], District Judge.

PER CURIAM:

---

[*]Honorable C. Ashley Royal, United States District Judge for the Middle District of
Georgia, sitting by designation.

This case is before us for review of the district court's grant of summary judgment in favor of various jail officials as to the civil rights claims of Plaintiff-Appellant Jose Elias Sepulveda ("Sepulveda").  Sepulveda, who proceeded *pro se* in the case below, was an inmate in the Alachua County Correctional Center ("ACCC") who brought claims for violations of the Eighth and First Amendments pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1]  We review a district court's grant of summary judgment *de novo*, "viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party."  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir.2002).  Upon review of the record in the case, we find that the district court properly granted summary judgment on all of Sepulveda's claims, with one exception.  There remain genuine issues of material fact related to Defendant-Appellee Floyd Gipson ("Gipson") and his role in an assault on Sepuveda by a fellow inmate.  Accordingly, the decision of the district court is hereby AFFIRMED in part, and REVERSED in part, and REMANDED to the

---

[1]Because Sepulveda does not raise any arguments as to his Section 1983 claims pursuant to the Fifth, Sixth, and Fourteenth Amendments, or as to his claims under Section 1986, those claims are deemed abandoned.  See Chavis v. Clayton County School Dist., 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (noting in a civil rights case that a plaintiff's retaliation claim that was not argued on appeal was abandoned).

district court for further proceedings on the merits with regard to the claims against Gipson.

The central event in this case is an assault on Sepulveda by inmate Donald Small that took place on February 2, 2000.  The evidence is sufficient to justify a jury finding that Gipson, a Detention Officer at ACCC, was aware that inmate Small posed a threat to Sepulveda, and was deliberately indifferent to that threat when he released Small and Sepulveda into a common area at the same time.  A reasonable jury could also draw inferences from the conduct of Gipson to support a conclusion that Gipson brought Sepulveda and Small together with the intent that Small would assault Sepulveda.

The undisputed facts alone raise a suspicion about Gipson's involvement in the attack, in that the attack occurred as a result of Gipson's decision to release Small and Sepulveda from their cells at the same time, even though both were Special Management inmates.  ACCC's policy manual defines a Special Management Inmate as an inmate who, "due to continual unruly and/or violent and aggressive behavior towards staff and/or other inmates, . . . presents a serious threat to the safety and security of the facility, other inmates, themselves, or is considered

3

an extremely high escape risk."[2] Inmates so classified are housed in ACCC's Special Managment Unit, where they receive a higher degree of supervision than inmates in the general population.

In releasing Small and Sepulveda, Officer Gipson violated three specific policies for supervision of Special Management inmates. First, he violated a policy that allowed only one inmate from the Special Management Unit to be outside his cell at any given time. Second, he violated a policy requiring Special Management inmates to be placed in leg restraints before leaving their cells. Third, he violated policy by leaving two metal chairs in the common area while Sepulveda and Small were released. Had Officer Gipson followed established procedures, Small would not have had the opportunity to attack Sepulveda.

The moment Officer Gipson released him into the common area, Small assaulted Sepulveda from behind, striking him in the left ear with his fist and causing hearing damage. Small continued to assault Sepulveda with his fist and with a metal chair, until he was finally restrained by Officer Gipson. There is no evidence in the record before us to indicate that any other officers were present at the time of the assault, or that anyone witnessed the assault besides Small,

---

[2]ACCC's Recommended Disciplinary Action Report for Officer Gipson's violation describes Small as a "special management inmate" and Sepulveda as an "escape risk inmate."

Sepulveda, and Gipson. The incident was investigated by the Alachua County Sheriff's Office, and inmate Small was prosecuted for aggravated assault. Officer Gipson was suspended for one day without pay for his violations of jail policy.

The disputed evidence, when viewed in the light most favorable to Sepulveda's case, may support a conclusion that Officer Gipson's violations of ACCC policy were more than a mere oversight, and that he had good reason to expect that Small would assault Sepulveda if given the opportunity. Indeed, Sepulveda's testimony indicates that Officer Gipson encouraged Small's hostility towards Sepulveda. According to Sepulveda, Small was "outspoken about his hatred of anybody who was not black." Sepulveda has testified by affidavit that prior to the attack Small had been known to scream racial slurs and display hostile behavior specifically directed at Sepulveda, in the presence of Officer Gipson. Small and Gipson are black; Sepulveda is hispanic. In his Complaint (verified pursuant to 28 U.S.C. § 1746) Sepulveda stated that Officer Gipson and Small had regular contact and that Gipson gave favorable treatment to Small. Sepulveda frequently heard Gipson and Small exchange racist remarks concerning him. Gipson referred to Sepulveda as a "snitch" or a "Puerto Rican snitch." On one occasion three days before the assault, Sepulveda overheard Gipson state to Small,

5

"Sepulveda is the piece of shit who's suing Greg. He didn't learn nothing when they shackled his ass."

Sepulveda's testimony regarding Officer Gipson's knowledge of Small's hostility is disputed by Defendants. Gipson testifies that prior to the February 2 assault, he had seen no indication of any animosity between the two inmates. In the report he gave to the Alachua County Sheriff's Deputy who investigated the assault, Gipson stated that prior to the assault Small and Sepulveda were on good terms, talked and joked with each other, and frequently played chess or checkers through the food slot in Small's cell.

Gipson also offers an explanation for his violation of the Special Management policies. In his affidavit, Gipson testifies that he allowed the two inmates out of their cells at the same time to accommodate their requests for haircuts. He states that he had two barbers sent to the Special Management Unit to "expedite" the haircut process.[3] In his statement to the Sheriff's investigator, he acknowledged that he "made the wrong decision," and explains that his decision "was based on my heart rather than my head." He states that Sepulveda and Small "had been getting along very well and no arguments or anything had taken place

---

[3]Sepulveda denies having requested a haircut, and there is no evidence in the record to indicate that any barbers were present in the Special Management Unit at the time Sepulveda and Small were released from their cells.

6

between them," and explains that this prior good relationship between the two played a part in his decision to release them both.

The primary question in this case concerns Officer Gipson's knowledge of the threat that Small posed to Sepulveda, and there is sufficient evidence of such knowledge to establish the subjective element of an Eighth Amendment claim. To prove a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must meet two requirements. First, he must show that the deprivation alleged was objectively serious enough to be of constitutional concern. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). Second, he must show that the prison official subjectively acted with a "sufficiently culpable state of mind," and that his actions constituted an "unnecessary and wanton infliction of pain." Id. In the context of the assault by inmate Small, the objective element is not a subject of dispute in this appeal. "Clearly, an allegation of an unjustified serious physical assault against an inmate raises an arguable section 1983 claim." McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983). The dispute in this case revolves around Gipson's state of mind and his culpability in the assault.

The question of Gipson's state of mind might be approached from two different perspectives: the perspective of a failure-to-protect case or the perspective

7

of a use-of-force case. In cases involving an officer's failure to protect an inmate from abuse by other inmates, a plaintiff must prove the officer's "deliberate indifference" to inmate health or safety. Id. In cases involving the direct use of force by an official, a plaintiff must show that the officer acted "maliciously and sadistically for the very purpose of inflicting harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986).

The conclusions of the finder of fact as to Gipson's intent will determine whether the use-of-force or the failure-to-protect analysis could be used in this case. A reasonable jury could find that Officer Gipson was aware that inmate Small was a threat to Sepulveda, based on Sepulveda's testimony about Small's prior displays of hostility towards him, in addition to Small's classification as a dangerous inmate. Such a finding would support a conclusion that Gipson was deliberately indifferent to Sepulveda's safety when he released the two inmates together. A reasonable jury might further infer from his conduct that Officer Gipson encouraged or deliberately orchestrated the assault, based on Sepulveda's testimony about the close relationship between Officer Gipson and Small, and their exchange of racist and derogatory remarks about Sepulveda. If a jury accepts as true Sepulveda's testimony about the prior relationship between Small and Gipson, it might also infer that Officer Gipson's release of the two inmates into the common

8

area at the same time was more than a momentary lapse of judgment, but was malicious and sadistic, for the very purpose of inflicting harm to Sepulveda.

The same evidence that supports Sepulveda's claim against Gipson under the Eighth Amendment also supports his claim of retaliation. "The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech," particularly the right to petition the government for redress of grievances by filing complaints or lawsuits regarding prison conditions. Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989). "A prisoner can establish retaliation by demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'" Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (quoting Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir.1989)). In this case, it is undisputed that Sepulveda had filed a lawsuit in 1999 against an officer at ACCC, Greg James, for an incident involving the use of leg shackles during a previous stay at the jail. In addition, in the weeks prior to the February 2, 2000 assault by inmate Small, Sepulveda had filed three grievances against officers at the jail, the last just two weeks before the assault. Should a jury find that Officer Gipson knowingly allowed or encouraged the assault by Small, there is evidence to support a causal connection between Gipson's actions and Sepulveda's protected activity. The primary piece of evidence supporting such a

9

causal connection is Sepulveda's testimony that three days prior to the attack he overheard Gipson telling Small that Sepulveda was "the piece of shit who's suing Greg," who "didn't learn nothing when they shackled his ass." These statements might be read to indicate that Gipson intended to teach Sepulveda the lesson he failed to learn when he was shackled, and to punish him for filing a lawsuit against Greg James. There are genuine issues of material fact concerning whether such statements were made and what inferences can be drawn from them. Accordingly, with regard to Sepulveda's claims against Defendant Gipson, summary judgment is not warranted.

Summary judgment is warranted, however, with regard to Sepulveda's claims against all other Defendants in this case, and we affirm the district court's grant of summary judgment in favor of those Defendants. As to Defendants Allen and Elliot, Sepulveda alleges that they referred to him as a "snitch" in the presence of other inmates and that Defendant Allen on one occasion jerked him by the ankle while checking his leg shackles. These claims do not rise to the level of a constitutional violation. See Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (verbal taunts not sufficient to constitute deprivation); Hudson v. McMillan, 503 U.S. 1, 9-10, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (*de minimis* uses of force excluded from Eighth Amendment prohibition). Sepulveda's

10

claims against Defendants Oelrich, Burnside, and Morrow are essentially *respondeat superior* claims, and there is no evidence that any of them was on notice that Sepulveda was at risk of being harmed by any inmate, or that any of them was involved with the attack by Small. See Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1989) ("Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort").   Finally, as there is no evidence to support a claim that Elliott, Allen, Oelrich, Burnside, or Morrow conspired or in any way acted with Gipson to encourage or allow the attack by Small, Sepulveda's conspiracy claims also merit summary judgment.

For the reasons set forth above, this case is hereby remanded to the District Court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.

11